(C.D. 2529)

NATIONAL CARLOADING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided on rehearing [C.D. 2224] April 15, 1965)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *James H. Lundquist, E. Thomas Honey, Earl R. Lidstrom,* and *Joseph Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Richard H. Welsh, Harold L. Grossman, Bernard J. Babb, Alfred A. Taylor, Jr.,* and *Arthur H. Steinberg,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Judge: The collector of customs classified an importation, described on the invoices, as fruit knives, as "Household knives 0/4″ " in paragraph 355 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 355), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820, and duty was imposed thereon at the rate of 4 cents each and 17½ per centum ad valorem.

It is the claim of plaintiff that said merchandise should be classified in paragraph 355, as modified, *supra,* as knives, not specially designed for other than household, kitchen, or butchers' use, and under 4 inches in length, exclusive of handles, which are dutiable at the rate of 1 cent each and 12½ per centum ad valorem.

The pertinent text of the statute is here set forth—

Paragraph 355 of the Tariff Act of 1930, as modified and supplemented, *supra,* the basis of the collector's classification:

Table, butchers', carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers', drawing, farriers', fleshing, hay, sugar-beet, beet-topping, tanners', plumbers', painters' palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not specially provided for:

  *   *   *   *   *   *   *

 With handles of nickel silver or steel other than austenitic:

  *   *   *   *   *   *   *

  Not specially designed for other than household, kitchen, or butchers' use:

  *   *   *   *   *   *   *

   4 inches or more long, exclusive of handle_____ 4¢ each and 17½% ad val.

Paragraph 355 of the Tariff Act of 1930, as modified and supplemented, *supra*, as claimed by plaintiff:

Table, butchers', carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers', drawing, farriers', fleshing, hay, sugar-beet, beet-topping, tanners', plumbers', painters' palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

With handles of nickel silver or steel other than austenitic:

\*     \*     \*     \*     \*     \*     \*

Not specially designed for other than
household, kitchen, or butchers' use:
Under 4 inches long, exclusive
of handle_____ 1¢ each and 12½% ad val.

This case was originally before us and decided in *National Carloading Corp.* v. *United States*, 46 Cust. Ct. 1, C.D. 2224, in which the claim of plaintiff was sustained.

At the original hearing, plaintiff's only witness was Arthur Salm, president of Arthur Salm, Inc., the ultimate consignee of the merchandise. He identified two samples, representing the shipment in question, which were received in evidence as exhibits 1 and 2.

The sole question for our determination is whether the knives are "under 4 inches long, exclusive of handle."

In reviewing Salm's testimony, we said:

The witness Salm has worked in the steel cutlery industry since 1950 and designed the subject fruit knives, which were manufactured to his specifications. He described the knives represented by exhibits 1 and 2 as a monoblock type of instrument forged from a single piece of metal which was machined and polished to its finished condition. He found the overall length of the knife represented by exhibit 1 to be 8⅜₆ inches and that the handle measured 4¼ inches, with the result that the length of the blade would be under 4 inches. He described the handle as that portion of the knife which extends from the end of the handle to where the blade begins, adding that "The design of this handle ends in what we call in our trade, a bolster." In his opinion, the cutting edge of the knife begins where the bolster ends and, conversely, where "the blade portion ends, that is where the handle starts."

Defendant introduced the testimony of Rosario Quatrochi, a customs examiner at the port of Chicago. It appears that, in measuring the knife for "advisory classification," he measured it from the pronged end of the knife out to the furthest point of the raised portion of the knife, which he found to be 4¹⁄₃₂ inches.

As an aid to our understanding of the meaning of the words "knife," "blade," and "handle," we cited the following definitions:

Webster's New World Dictionary, college edition (1958):

knife, *n.* 1. a cutting instrument with one or more sharp-edged blades, often pointed, set in a handle. 2. a cutting blade, as in a machine.

blade, *n.* * * * 4. the cutting part of a tool, instrument, or weapon.

handle, *n.* 1. that part of a utensil, tool, etc., which is to be held, turned, lifted, pulled, etc., with the hand.

Webster's New Collegiate Dictionary, second edition:

knife, *n.* 1. An instrument consisting (in its modern form) of a thin blade, usually of steel and having a sharp edge for cutting, fastened to a handle. [Together with this definition, there are 21 illustrations of various types of knives.]

Funk & Wagnalls New Standard Dictionary of the English Language (1941):

knife, *n.* 1. A blade, usually of steel, with one sharpened edge, set in a handle, for cutting.

blade, *n.* 1. The flat cutting part of a knife, sword, or other edged tool or weapon; also, the flat leaf-like part of any instrument or utensil, as of an oar, screw propeller, paddle-wheel, spade, plane, saw, etc.

handle, *n.* 1. That part of an object intended to be grasped with the hand in lifting or using, as a haft, helve, hilt, crank, bail, or knob.

With the aid of these definitions, we concluded that a blade "is the cutting portion of a knife, the other portion being described as the handle."

We also expressed the opinion that a physical examination of exhibits 1 and 2 clearly indicates that the fruit knives in controversy were in length, exclusive of handles, under 4 inches.

At the trial on rehearing at New York, plaintiff called as a witness Herman Kaplan, president of Griffon Cutlery Corp. and of the Rex Cutlery Corp. for 3 years, but connected with the Griffon Corp. for 35 years. He was thoroughly familiar with all phases of that business. He identified exhibits 1 and 2 as types of knives forged in one piece from stainless steel, a process referred to as a monoblock type of construction. He did not consider the wide portion in the center of the knife to be a bolster, but merely a decorative part of the handle; that a bolster is not applicable to the monoblock construction; and that a handle is the portion of the knife which is held in the hand, the blade being the part used for cutting. He stated that in the trade a bolster is used to cover and decorate the seam between the blade and the handle, noting that a monoblock knife does not have a seam.

It was his testimony that the overall length of the knife is $8\frac{3}{16}$ inches and the longest portion of the handle $4\frac{6}{16}$ inches and that the knives were less than 4 inches in length, exclusive of the handles.

The defendant called as its witness Stanley Kay, the Chicago office manager and representative for the hotel division of International Silver Co., which manufactures flatware.

This witness seems to have been somewhat confused when measuring exhibit 1. When asked to measure the blade of exhibit 1, he answered it was "approximately four inches"; that the handle of the knife was "approximately four and three-eighths and being a

slant bar effect to four and one-eighth." When asked to again measure the handle he replied "Four and one-eighth, this is calibrated in eighths, isn't it? Four and one-sixteenth, excuse me."

Further, regardless of differences of opinion among the witnesses as to the length of the knife, exclusive of the handle, the weight of competent evidence satisfies us that the knives in question are under 4 inches in length, exclusive of the handles, within the meaning of paragraph 355, as modified, *supra.*

Nothing of fact or logic has been developed in the rehearing proceedings to change our original conclusion.

It is worthy of note that in none of the definitions of the word "knife," above quoted, is any reference made to a bolster, but only to a blade and a handle.

The context of paragraph 355 clearly indicates that Congress, in placing a protective duty on knives, was concerned primarily with the handles, providing a sliding scale of rates of duty depending upon the material of which the handles were constructed. There was no mention whatever of bolsters. Since the blade of a knife is "the flat cutting part of a knife," it stands to reason that a bolster could not be a part of the blade.

Upon the present record, we see no reason for departing from our original judgment.

The context of paragraph 355, consideration of the various definitions of "knife," "blade," and "handle," together with a review of the record, and a physical examination of the exhibits, satisfy us that the knives in question are fruit knives under 4 inches in length, exclusive of the handles, and are dutiable in said paragraph 355, as modified. That claim of the importer is sustained. Judgment will enter directing the collector of customs to reliquidate the entries accordingly.